**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kaleb Russell Mearkle, | No. CV-24-02617-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of his application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 14), the Commissioner's answering brief (Doc. 18), and Plaintiff's reply (Doc. 19), as well as the Administrative Record (Docs. 9-13, "AR"), and now reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

I.    Procedural History

Plaintiff filed an application for supplemental security income on September 21, 2021, alleging a disability onset date of June 1, 2002. (AR at 15.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels. (*Id.*) On January 19, 2024, following a video hearing, the ALJ issued an unfavorable decision. (*Id.* at 15-24.) On March 25, 2024, Plaintiff submitted a "memorandum in support of a request for Appeals Council review." (*Id.* at 369-81.) As discussed in more detail below, the memorandum challenged the ALJ's determination of

1    the number of "hand packager" jobs that exist in the national economy. (*Id.*) The Appeals

2    Council accepted Plaintiff's evidence but denied review. (*Id.* at 1-5.)

3    II.    <u>The Sequential Evaluation Process and Judicial Review</u>

4            To determine whether a claimant is disabled for purposes of the Act, the ALJ

5    follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of

6    proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*

7    *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether

8    the claimant has engaged in substantial, gainful work activity.    20 C.F.R.

9    § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe"

10   medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii). At step

11   three, the ALJ considers whether the claimant's impairment or combination of impairments

12   meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R.

13   Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ

14   assesses the claimant's residual functional capacity ("RFC") and proceeds to step four,

15   where the ALJ determines whether the claimant is still capable of performing past relevant

16   work. *Id.* § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where

17   the ALJ determines whether the claimant can perform any other work in the national

18   economy based on the claimant's RFC, age, education, and work experience. *Id.*

19   § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

20          An ALJ's factual findings "shall be conclusive if supported by substantial

21   evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotations omitted). The

22   Court may set aside the Commissioner's disability determination only if it is not supported

23   by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th

24   Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept

25   as adequate to support a conclusion considering the record as a whole. *Id.* Generally,

26   "[w]here the evidence is susceptible to more than one rational interpretation, one of which

27   supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*,

28   278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse

an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision.  *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

### III.    The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial, gainful work activity since the application date and that Plaintiff had the following severe impairments: "status-post amputation of the right lower extremity, epilepsy, asthma, and intellectual disorder."  (AR at 17.)[1]

Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing.  (*Id*. at 18-19.)  Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can occasionally climb stairs but never climb ladders.  He can occasionally stoop, kneel, and crawl but never crouch.  He can have only occasional exposure to heights, moving machinery, chemicals, dust, fumes, smoke, or temperature extremes.  He is able to understand, remember, and carry out simple, repetitive job instructions only.

(*Id*. at 19.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id*. at 20.)

The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) "the State Medical Consultants" ("persuasive"); (2) Richard Palmer, M.D., consultative examiner ("persuasive"); and (3) Jill Plevell, Ph.D., psychological consultative examiner ("persuasive").  (*Id*. at 22-23.)  However, the ALJ clarified that "[a]lthough the opinions and findings are persuasive, they are not adopted in their entirety.  This decision differs from their opinions and findings to account for the claimant's

---

[1]    The ALJ also determined that Plaintiff had the non-severe impairments of gastroparesis and gastrointestinal issues and rejected Plaintiff's contention that he had a severe cardiovascular impairment.  (AR at 17-18.)

testimony and to use language and specificity required by Social Security regulations." (*Id.* at 23.)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that although Plaintiff had no past relevant work, he was capable of performing three jobs that exist in significant numbers in the national economy: (1) "Information clerk, Dictionary of Occupational Titles (DOT)# 237.367-018, light, unskilled work with specific vocational preparation (SVP) level 2 with approximately 25,000 such jobs in the national economy"; (2) "Hand packager, DOT# 920.687-018, light, unskilled SVP level 2 with approximately 32,000 such jobs in the national economy"; and (3) "Inspector, DOT# 559.687-074, light, unskilled SVP level 2 with approximately 101,000 such jobs in the national economy." (*Id.* at 23-24.)  Thus, the ALJ concluded that Plaintiff was not disabled.  (*Id.* at 24.)

IV.    Discussion

Plaintiff raises two issues on appeal: "whether the ALJ erred by (1) improperly rejecting the 1-2 step limitation offered by the State agency psychological consultant, and (2) improperly rejected Plaintiff's testimony regarding his headaches." (Doc. 14 at 4.)  As a remedy, Plaintiff seems a remand for further proceedings.  (*Id.* at 13.)

A.    **Whether The ALJ Committed Harmful Error By Failing To Incorporate, In The RFC, The Limitation To One- Or Two-Step Tasks Identified By The State Agency Psychological Consultants**

1.    Relevant Background

The ALJ determined that the opinions of "the State Medical Consultants" were "persuasive" and cross-referenced the agency reports analyzing Plaintiff's claim of disability at the initial and reconsideration levels.  (AR at 22 [citing "2A; 3A"].)  Although the ALJ did not identify, by name, the medical sources who contributed to those reports, a review of the reports reflects that Dr. Eric Penner was responsible for analyzing Plaintiff's psychological symptoms and mental RFC at the initial level and that Dr. Crystal M. Duclos was responsible for analyzing those topics at the reconsideration level.  (*Id.* at 61-62, 66-67 [Dr. Penner]; *id.* at 71-73, 77-78 [Dr. Duclos].)

Drs. Penner and Duclos both opined that Plaintiff would be "moderately limited" in his "ability to maintain attention and concentration for extended periods" and in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms" and further wrote, in the narrative section of the report, that Plaintiff "can perform 1-2 step tasks on a consistent, productive basis across a routine work day and week." (*Id.* at 66, 77.)

Despite concluding that the opinions of Drs. Penner and Duclos were persuasive, the ALJ did not include, in the RFC, a limitation to one- or two-step tasks. Instead, the ALJ found that Plaintiff "is able to understand, remember, and carry out simple, repetitive job instructions only." (*Id.* at 19.) Thus, the hypothetical question to the VE did not include a limitation to one- or two-step tasks. (*Id.* at 53 ["Okay. Let's go to a hypothetical. Assume a person of Claimant's age, which is 21, with an 11th grade education, and the same past relevant work, with the following restrictions present. The hypothetical person . . . is able to understand, remember, and carry out simply job instructions only."].)

## 2. The Parties' Arguments

In his first assignment of error, Plaintiff argues that the ALJ "improperly rejected the 1-2 step limitation offered by the State agency psychological consultant." (Doc. 14 at 4.) According to Plaintiff, the ALJ was required to include this limitation in the RFC because the ALJ found that the opinions of Drs. Penner and Duclos—both of which included this limitation—were persuasive. (*Id.* at 5-6.) Plaintiff further contends the ALJ's inclusion of a limitation to "understanding, remembering, and carrying out simple, repetitive job instructions" was inconsistent with the limitation identified by Drs. Penner and Duclos because the ALJ's chosen limitation is consistent with Level Two reasoning, whereas a limitation to one- or two-step tasks is consistent with Level One reasoning. (*Id.* at 6.) Turning to whether the error was harmless, Plaintiff contends that two of the jobs identified by the VE (information clerk and inspector) require at least Level Two reasoning, so the inclusion of the limitation identified by Drs. Penner and Duclos would have eliminated those jobs. (*Id.*) As for the final job identified by the VE (hand packager),

1    Plaintiff contends that although the VE testified (and the ALJ accepted) that 32,000 such
2    jobs exist in the national economy, the evidence that Plaintiff submitted to the Appeals
3    Council shows that only 6,143 such jobs exist in the national economy. (*Id.* at 7.) Plaintiff
4    contends that the Appeals Council erred by failing to provide a reasoned basis for rejecting
5    this evidence and that a remand is necessary to correct the error: "[T]he Commissioner's
6    failure to resolve the discrepancy between the VE's job numbers and the vocational rebuttal
7    evidence submitted by Plaintiff is harmful as the total offered by Plaintiff would be
8    insufficient to show a significant number of jobs in the national economy that Plaintiff
9    would be capable of performing. Therefore, a remand is necessary for additional VE
10   testimony regarding whether there is work in the national economy which Plaintiff can
11   perform." (*Id.* at 8-9.)

12           In response, the Commissioner argues that the ALJ reasonably interpreted the
13   opinions of Drs. Penner and Duclos as limiting Plaintiff to "simple, repetitive instructions,"
14   which encompasses the "lesser-included ability to do '1-2 steps.'" (Doc. 18 at 4-5.) In the
15   alternative, the Commissioner argues that even if the ALJ erred in failing to include a
16   limitation to one- or two-step tasks, the error was harmless because one of the jobs
17   identified by the VE was hand packager, that job may be performed by an individual who
18   is limited to one- or two-step tasks, and that job alone exists in significant numbers in the
19   national economy. (*Id.* at 5-6.) The Commissioner further argues that Plaintiff's attempt
20   to challenge the number of hand packager jobs identified by the VE (32,000) fails for two
21   independent reasons: (1) Plaintiff failed to preserve the issue by not objecting during the
22   hearing before the ALJ and instead attempting to raise the issue for the first time via a
23   submission to the Appeals Council; and (2) at any rate, Plaintiff's post-hearing submission
24   was not "significant and probative" because Plaintiff failed to demonstrate that his numbers
25   were produced using the same methodology as the VE and because "Plaintiff has not
26   explained how his numbers were produced," including not "identify[ing] the methodology,
27   filters, variables, and data used by the software itself." (*Id.* at 6-10.)

28           In reply, Plaintiff argues that the Commissioner's attempt to equate a limitation to

"simple, routine tasks" with a limitation to "1-2 step tasks" is contrary to Ninth Circuit law (Doc 19 at 1-2); that "while it is true that Plaintiff did not raise the issue of job numbers before the ALJ," the issue should still be deemed preserved because the need to question the VE's estimate of the number of hand packager jobs didn't become apparent until after the ALJ hearing, when it became clear that two of the three positions identified by the VE were inconsistent with a limitation to one- or two-step tasks (*id.* at 2-4); and that his proffered job numbers were significant and probative because "the evidence was clearly created in Job Browser Pro and the process was described and attested to by Plaintiff's representative" (*id.* at 4-5).

3.     Analysis

Drs. Penner and Duclos both opined that Plaintiff was moderately limited in various psychological respects and "can perform 1-2 step tasks on a consistent, productive basis across a routine work day and week." (AR at 66, 77.) The ALJ deemed these opinions "persuasive" yet did not include a limitation to one- or two-step tasks in the RFC—instead, the ALJ determined that Plaintiff "is able to understand, remember, and carry out simple, repetitive job instructions only." (*Id.* at 19, 22.) This approach was erroneous. The Ninth Circuit has indicated that a limitation to one- or two-step tasks is more restrictive than a limitation to "simple" or "repetitive" tasks, because the former is consistent with Level One reasoning while the latter is consistent with Level Two reasoning. *See, e.g., Davis v. Saul*, 846 F. App'x 464, 466 (9th Cir. 2021) ("A finding that Davis had the [RFC] to do only one- or two-step tasks would require the ALJ to find her able to perform jobs requiring no more than Reasoning Level 1."); *Keifer v. Saul*, 789 F. App'x 581, 582 (9th Cir. 2020) ("The ALJ found Keifer's [RFC] limited her to jobs involving one- to two-step instructions, meaning she was limited to DOT Reasoning Level 1 jobs."); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003-04 & n.6 (9th Cir. 2015) (noting that "Level One reasoning requires a person to apply 'commonsense understanding to carry out simple one- or two-step instructions,'" whereas many courts "have concluded that an RFC limitation to 'simple' or 'repetitive' tasks is consistent with Level Two reasoning"). An ALJ errs by

accepting the persuasiveness of a medical source's opinion but then, without explanation, formulating an RFC that is less restrictive than that opinion. *See, e.g., Ariceli D. H. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 5321068, *3 (D. Or. 2023) ("[T]he ALJ erred when he found Dr. Mohney's medical opinion persuasive that limited Plaintiff to one and two step tasks, but then implicitly rejected or ignored that opinion when he created an RFC that limited her only to simple, repetitive, and routine tasks, without explanation.").

Turning to whether the error was harmless, the parties seem to agree that a limitation to one- or two-step tasks would be inconsistent with two of the jobs identified by the VE (information clerk and inspector) but would be consistent with the third job identified by the VE (hand packager). The harmlessness analysis thus turns on whether there was any error in the ALJ's acceptance of the VE's determination that the job of hand packager, alone, exists in significant numbers (*i.e.*, 32,000) in the national economy.

The Commissioner contends that Plaintiff has forfeited any objection on this issue because he did not challenge the VE's job-numbers calculation during the proceedings before the ALJ and instead sought to raise this issue for the first time via a post-hearing submission to the Appeals Council. This argument is unavailing. Although the Ninth Circuit's 2017 decision in *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017), is ambiguous as to how to apply forfeiture principles in this circumstance,[2] the Ninth Circuit

---

[2] The very first paragraph of *Shaibi* holds that when "a Social Security claimant . . . wishes to challenge the factual basis of a vocational expert's estimate of the number of available jobs in the regional and national economies," "such a claimant must, at a minimum, raise the issue of the accuracy of the expert's estimates *at some point during administrative proceedings* to preserve the challenge on appeal in federal district court." *Id.* at 1103 (emphasis added). However, later portions of the opinion include the following passages: "We recognize that a claimant will rarely, if ever, be in a position to anticipate the particular occupations a VE might list and the corresponding job numbers to which a VE might testify at a hearing. We do not suggest that a claimant must, within minutes of a VE's initial testimony, cross-examine a VE with specific alternative job calculations . . . . *It is enough to raise the job-numbers issue in a general sense before the ALJ.* A claimant may do so by inquiring as to the evidentiary basis for a VE's estimated job numbers, or inquiring as to whether those numbers are consistent with [other sources]. If that is done, an ALJ, on request, ordinarily would permit the claimant to submit supplemental briefing or interrogatories contrasting the VE's specific job estimates with estimates of the claimant's own. *If the ALJ declines to do so, a claimant may raise new evidence casting doubt on a VE's job estimates before the Appeals Council*, provided that evidence is both relevant and relates to the period on or before the ALJ's decision." *Id.* at 1110 (emphases added and internal citations omitted). The two sets of italicized passages are difficult to reconcile because the first suggests a claimant may avoid forfeiture by raising a challenge

1       subsequently clarified, in its 2022 decision in *White v. Kijakazi*, 44 F.4th 828 (9th Cir.

2  2022), that when a claimant seeks to challenge a VE's job-numbers calculation for the first

3  time via a post-hearing submission to the Appeals Council and the Appeals Council

4  expressly agrees to make that evidence part of the administrative record, the challenge may

5  be considered: "We recognize that the claimant in [an earlier case] submitted his estimated

6  job numbers to the ALJ, and that White submitted his estimated job numbers to the Appeals

7  Council.  This distinction is not fatal.  Under SSA regulations, a claimant has a right to

8  submit additional evidence to the Appeals Council, which the agency may choose to make

9  part of the administrative record where it finds that certain conditions are met, as it appears

10  to have done here. . . .  [W]e hold that remand is appropriate to allow the ALJ to address

11  the evidence and to resolve the inconsistency between the job-number estimates provided

12  by White and by the VE."  *Id.* at 837.  Here, the Appeals Council expressly held that it was

13  "making part of the record" the job-numbers evidence submitted by Plaintiff.  (AR at 5.)

14  Thus, the issue is not forfeited.

15       On the merits, when a claimant submits conflicting job-numbers evidence to the

16  Appeals Council that is "significant and probative," this triggers "an obligation" to

17  "remand . . . to allow the ALJ to address the evidence and to resolve the inconsistency

18  between the job-number estimates provided by [the claimant] and by the VE."  *White*, 44

19

20  to the VE's job-numbers calculation "at some point during the administrative
    proceedings"—a formulation that would encompass the Appeals Council phase—while the

21  second suggests that such a challenge must first be raised "before the ALJ" and that an
    evidentiary submission to the Appeals Council is only permissible if "the ALJ declines" to

22  properly address the claimant's challenge.  Presumably because of this ambiguity, the
    Ninth Circuit issued conflicting unpublished decisions between 2017 and 2021 on this

23  issue.  *Compare Jaquez v. Saul*, 840 F. App'x 246, 247 n.2 (9th Cir. 2021) ("The
    Commissioner argues that Jaquez forfeited or waived this issue because he did not present

24  this evidence before the ALJ.  But it appears that the Appeals Council considered this
    evidence in denying Jaquez's appeal.  Jaquez thus neither waived nor forfeited this

25  challenge.") *with Shapiro v. Saul*, 833 F. App'x 695, 696 (9th Cir. 2021) ("Shapiro and her
    representative declined to cross-examine the VE during the hearing, and Shapiro does not

26  argue that she requested an opportunity to submit interrogatories or supplemental briefing
    for the ALJ to consider.  Instead, Shapiro submitted new evidence on job numbers

27  contesting the VE's estimates to the Appeals Council.  Because she was represented and
    did not challenge the VE's job numbers during the hearing before the ALJ, Shapiro forfeits

28  such a challenge on appeal.") (cleaned up).  *See generally Shawn P. v. Kijakazi*, 2021 WL
    4460646, *8-11 (S.D. Cal. 2021) (discussing *Shaibi*'s imprecision on this point).

F.4th at 837.  No such remand was ordered here.  Thus, so long as Plaintiff's proffered evidence was "significant and probative," a remand is required.  *See also Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023) ("Although the agency has not directly addressed the ALJ's responsibility to resolve a conflict between the VE's job-number estimates and the claimant's job-number estimates, we have held that—as with any other inconsistency in record evidence—the ALJ may have a duty to address such a conflict. That duty arises only where the purportedly inconsistent evidence is both significant and probative, as opposed to meritless or immaterial.  After all, an ALJ need not discuss all evidence presented to her.  Rather, an ALJ must explain why significant probative evidence has been rejected.") (cleaned up).

The Court has little trouble concluding that Plaintiff's proffered job-numbers evidence satisfies the "significant" requirement.  That evidence suggests only 6,143 hand packager jobs exist in the national economy.  (AR at 373.)  In contrast, the VE testified, and the ALJ accepted, that approximately 32,000 such jobs exist in the national economy. (*Id.* at 24, 54.)  The difference between 6,143 and 32,000 jobs is significant, particularly in a case where the other two jobs identified by the VE are inconsistent with the limitations identified by Drs. Penner and Duclos.  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) ("Under our current case law, the ALJ's finding that 25,000 national jobs is sufficient presents a close call.").

The closer question is whether Plaintiff's proffered job-numbers evidence satisfies the "probative" requirement.  Three recent Ninth Circuit decisions help inform the analysis on this issue:

   • First, in *Kilpatrick v. Kijakazi*, 35 F.4th 1187 (9th Cir. 2022), the Ninth Circuit held that the claimant's proffered job-numbers evidence was not probative where the claimant's attorney (1) did not "use[] the same software program as the VE" and "did not replicate the VE's same methodology"; (2) "had no identified expertise in calculating job figures in the national economy"; and (3) used a "methodology" with several "obvious" flaws, including reliance on "data that was roughly seven years old" and reliance on an

1   "improbable assumption" that had been previously criticized by the Seventh Circuit. *Id.* at

2   1194.

3        • Second, in *White*, the Ninth Circuit held that the claimant's proffered job-numbers

4   evidence was sufficient to trigger a need for a remand where the claimant (1) "us[ed]

5   SkillTRAN Job Browser Pro and the same DOT codes the VE had used," and thus produced

6   his evidence "using a data source and methodology frequently relied on by the SSA";

7   (2) "attached screenshots of SkillTRAN Job Browser Pro showing these job numbers"; and

8   (3) asserted that "his job estimates were produced using the same methodology as that used

9   by the VE." *White*, 44 F.4th at 834, 837.

10       • Third, in *Wischmann*, the Ninth Circuit held that the claimant's proffered job-

11  numbers evidence was not probative where (1) "the letter provides no information about

12  how the job numbers were produced, other than the name of the software program used";

13  (2) "the letter does not state who produced the outputs—whether a VE with expertise in

14  developing job numbers or the attorney himself"; (3) "the letter [does not] establish that

15  the attorney replicated a methodology that was set forth by the VE at the hearing"; (4) "the

16  letter provides no information about what queries were entered into the computer program,

17  what variables were changed, or what filters were applied to the data"; (5) "the letter [does

18  not] state which version of the program was used, so we do not know whether the

19  information used by the program was current or out of date"; (6) "[n]either the letter nor

20  the pages themselves state that the printout data was produced with Job Browser Pro"; (7)

21  "[t]he raw data set out on these pages is not comprehensible to a lay person"; (8)

22  "Wischmann does not provide the interpretation necessary to make the pages meaningful

23  to a court"; and (9) there were "obvious reasons to question the reliability of the attached

24  computer printouts," including that "the letter's statement of estimated job numbers does

25  not fully correspond to the numbers in the printouts." *Id.* at 506-07 (cleaned up).

26       The job-numbers evidence submitted by Plaintiff in this case is not marred by many

27  of the flaws that were present in *Kilpatrick* and *Wischmann* and more closely resembles

28  the evidence that was deemed sufficiently probative in *White*.  Plaintiff's evidence was

accompanied by an attestation by Plaintiff's counsel, under penalty of perjury, that the job-numbers estimates were generated via SkillTRAN's Job Browser Pro. (AR at 371-72 & n.1.) This attestation is significant because Job Browser Pro "is a software widely used by VEs that collects and analyzes Bureau of Labor Statistics data" and is "a source that has been recognized as a reliable source of job-number estimates." *Rashidi v. Kijakazi*, 2022 WL 17974638, *2 & n.2 (9th Cir. 2022). *See also White*, 44 F.4th at 837 (emphasizing that the claimant "us[ed] SkillTRAN Job Browser Pro and the same DOT codes the VE had used"). The attestation also identified when the report was generated (AR at 371 [June 2023]); identified the version of Job Browser Pro that was used (*id.* at 377 ["VERSION 1.7.5.0"]); provided an overview of the methodology used to generate the report (*id.* at 371 ["The data was generated by entering the DOT code into the program, with no filters, and using the program's built-in option to generate a DOT specific estimate of job numbers"]); provided—just as in *White*—a more specific, step-by-step walkthrough of the various queries used to generate the report, illustrated in screenshots (*id.* at 377-81); and included an avowal that the methodology used to generate the report was the same "methodology [that is] widely used by vocational experts in Social Security Administration hearings" (*id.* at 371). Additionally, whereas the submissions in *Kilpatrick* and *Wischmann* included various flaws that raised obvious reliability questions, such as the use of a particular methodology that had been criticized by the Seventh Circuit (*Kilpatrick*), reliance on outdated data (*Kilpatrick*), and mismatched job figures (*Wischmann*), the Commissioner does not identify any such specific flaws in Plaintiff's proffered evidence—instead, the Commissioner simply contends that Plaintiff did not do enough to establish that his methodology mirrored the VE's methodology. (Doc. 18 at 8-10.) But even assuming this is true,[3] the Court does not construe *Kilpatrick* and *Wischmann* as establishing a hard-and-

---

[3]    The VE did not identify which source or methodology she used to calculate her job-numbers estimates. (AR at 54.) If the Court were to accept the Commissioner's logic, this omission would mean that Plaintiff could never satisfy the "probative" requirement (because, without such testimony from the VE, Plaintiff could never demonstrate that the methodology he utilized to calculate his conflicting job-numbers estimates was the same as the VE's methodology). Such a rule would be difficult to reconcile with the notion, recognized in *White*, that it is permissible for a claimant to submit job-numbers evidence for the first time in a post-hearing submission to the Appeals Council, at least when (as

fast rule that a claimant's proffered job-numbers evidence can never be considered "probative" unless, at a minimum, the claimant elicits testimony from the VE concerning the VE's methodology and then submits evidence establishing that the claimant followed the exact same methodology. *Thomas S. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 4074769, *4 (D. Or. 2023) ("Defendant argues that Plaintiff did not adequately replicate the VE's methodology because he relied only on Job Browser Pro, while the VE testified to relying on both Job Browser Pro and OASYS. The Court rejects this argument. As Plaintiff points out, the Ninth Circuit has not held that the plaintiff must precisely replicate the VE's methodology. Rather, the plaintiff must submit significant probative evidence."). True, both decisions remarked on the claimant's failure to replicate the VE's methodology, but in each case this flaw simply served as one of multiple reasons why the claimant's evidence was deemed non-probative. *Kilpatrick*, 35 F.4th at 1194 ("Under all these circumstances, Anderson's submission was not significant probative evidence, and the ALJ did not err in not addressing it."); *Wischmann*, 68 F.4th at 506 ("[W]e consider on a case-by-case basis whether new evidence submitted by a claimant is 'meritless or immaterial' or has 'significant probative' value.").

Because Plaintiff presented sworn evidence regarding the details of his methodology, including that it was derived from an updated version of Job Browser Pro, and because that evidence was comprehensible on its face and was not marred by any of the sorts of obvious flaws present in *Kilpatrick* and *Wischmann*, the Court concludes that Plaintiff's proffered evidence was sufficiently "probative" to warrant consideration. *Cf. Stephanie A. v. Kijakazi*, 2023 WL 6305793, *5 (S.D. Cal. 2023) ("Plaintiff's job-number estimates appear to have been derived from Job Browser Pro general queries for the DOT job numbers identified by the VEs for Table or Bench Worker and Lens Inserter. Furthermore, it does not appear from Plaintiff's evidence that he applied any filters and an updated version of the software, Job Browser Pro, Version 1.7.3.1, was used. . . . The

here) the Appeals Council agrees to accept that information and make it part of the administrative record.

Court concludes that Plaintiff's evidence is probative."). Accordingly, when the Appeals Council decided to accept that evidence and make it part of the administrative record, the Appeals Council should have remanded to the ALJ for further consideration rather than affirming the ALJ's decision. *See, e.g., White*, 44 F.4th at 837 ("The evidence White submitted to the Appeals Council created an inconsistency in the record that the agency had an obligation . . . to address and resolve. We reverse the decision of the district court with directions that the case be remanded to the agency for further proceedings consistent with this opinion."); *Perkins v. Kijakazi*, 2022 WL 3585587, *2 (9th Cir. 2022) ("Perkins' new job-number evidence came from the same source as White's evidence—Job Browser Pro—so was equally 'significant' and 'probative.' Additionally, the discrepancy between Perkins' new job-numbers estimates (4,827 jobs in total) and the only estimates provided by a VE in this case (579,000 jobs in total) was even larger than the substantial discrepancy in *White*. Because the Appeals Council chose to make this new evidence part of the administrative record, the agency was bound to address and resolve the conflict between Perkins' job-numbers estimates and the 2011 VE's estimates. It failed to do so, and so we reverse the district court's order affirming the denial and direct that the case be remanded to the agency for further proceedings consistent with this decision.") (citations omitted).

### B. Consideration Of Plaintiff's Symptom Testimony

Because the Court has already determined that Plaintiff is entitled to a remand for further proceedings based on his first assignment of error, and because Plaintiff does not contend he is entitled to a more far-reaching remedy (*i.e.,* a remand for calculation of benefits) based on his second assignment of error, it is unnecessary to resolve the merits of Plaintiff's second assignment of error.

…

…

…

…

…

1    Accordingly,

2    **IT IS ORDERED** that:

3    1.    The decision of the ALJ is **reversed** and this matter is **remanded for further**

4    **proceedings**.

5    2.    The Clerk shall enter judgment accordingly and terminate this action.

6    Dated this 23rd day of September, 2025.

7

8

9    _____

10    Dominic W. Lanza
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28